**ORDERED in the Southern District of Florida on August 18, 2026.**

Peter D. Russin, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

Case No. 26-13896-PDR

Uchendu Ikenna Azodo and
Gail Danielle Hamilton Azodo,

Chapter 11, Subchapter V

Joint Debtors.
_____________________________________/

**ORDER DETERMINING THE SCOPE OF THE AUTOMATIC STAY AND GRANTING LIMITED RELIEF FROM STAY**

Bankruptcy draws a line between what the automatic stay protects and what it does not. The stay protects the debtor and property of the bankruptcy estate. A debtor's equity interest in a company becomes estate property; the company's assets do not. But the line is less clear when that equity interest carries the right to manage the company. Does the stay prevent another court from appointing a

receiver over the company because the receiver would displace the debtor's management authority? This dispute lies at that boundary.

The Debtors each own half of two nondebtor holding companies, Real Hearing LLC and Real Hearing 2 LLC (together, the "Real Hearing Entities"). Those companies, in turn, own nondebtor audiology practices. Sonova USA Inc., a creditor of the Debtors and the Real Hearing Entities, has moved for a receiver to be appointed over the Real Hearing Entities in federal court in Illinois. The Debtors and the Real Hearing Entities argue that this action by Sonova has violated the automatic stay; they contend that Sonova is a competitor using debt enforcement remedies to put the Real Hearing entities out of business, which would destroy the value of the Debtors' membership interests.

That concern, while certainly legitimate, does not expand the automatic stay. Whether Sonova has a basis for the appoint of a receiver, whether it is pursuing an improper competitive objective, and whether a receivership would preserve or destroy value are questions for the court asked to appoint the receiver. The automatic stay does not give the Debtors a veto over equitable relief against nondebtors merely because that relief may reduce the value of their equity. For the following reasons, the Court modifies the stay, to the extent it applies at all, so the Illinois District Court can decide those questions, subject to clear limits protecting the Debtors and this bankruptcy estate.

## I. <u>Background</u>

The Debtors commenced this joint Subchapter V case on March 30, 2026. They remain Debtors in Possession, and Tarek Kiem serves as the Subchapter V

trustee. Each Debtor owns a fifty percent membership interest in the Real Hearing Entities which are Delaware limited liability companies and are not debtors in this, or any other, bankruptcy case.

The Real Hearing Entities are holding companies that own interests in nondebtor entities that provide audiology and hearing aid services in several states (the "Practice Entities"). The Real Hearing Entities and the Practice Entities own their respective cash, receivables, equipment, inventory, contract rights, records, goodwill, and other assets. The Debtors do not own those assets directly.

Sonova filed Claim No. 21-1 for $4,722,809.84.[1] It designated its claim against the Debtors as unsecured and attributed liability principally to a guaranty executed by Gail Azodo. Sonova separately asserts liens against property owned by the Real Hearing Entities, including their ownership interests in the Practice Entities. Claim No. 21-1 does not assert a lien against the Debtors' membership interests in the Real Hearing Entities. The validity, amount, priority, and enforceability of Sonova's asserted claims and liens remain disputed.

The Debtors' plan generally provides that they will retain estate property after confirmation, but it does not separately value the Debtors' interests in the Real Hearing Entities or propose their sale, financing, restructuring, abandonment, or other disposition.[2] The projections identify $2,600 per month of anticipated "Real Hearing" income, but the Debtors have not presented a concrete means of preserving or realizing value from the membership interests. They have not sought

[1] Proof of Claim No. 21-1.

[2] Dkt. No. 50.

authority to sell those interests, obtained financing for the Real Hearing platform, or placed a binding value-preservation transaction before the Court. At the hearing, counsel referred generally to prospective purchasers, but no purchaser had been vetted, and no transaction was ready for review.

Meanwhile, operations of the Practice Entities have been suspended or substantially curtailed. Nonessential employees were furloughed, and the principals lacked funds for payroll, inventory, and warranty service. The resulting loss of customers, employees, goodwill, and going concern value is continuing.

On June 26, 2026, Sonova commenced *Sonova USA Inc. v. Real Hearing, LLC, et al.*in the United States District Court for the Northern District of Illinois, Eastern Division (the "Illinois Action").[3] The only defendants are the Real Hearing Entities. Neither Debtor is a defendant. Sonova seeks damages for breach of loan and supply agreements, foreclosure of asserted liens against property of the Real Hearing Entities, and appointment of a receiver over the Real Hearing Entities and their property. No receiver has been appointed, and no substantive receivership relief has been implemented. Sonova asked that the Illinois Action be held while this Court determined the reach of the automatic stay.

Sonova's proposed receivership order in the Illinois Action is broad. It would authorize a receiver to take possession and control of the Real Hearing Entities and their property, exercise powers otherwise held by their officers, managers, and members, displace existing management, control the Practice Entities, operate, sell, or wind down entity assets, pursue or settle entity claims, and prevent the Debtors

[3] *Sonova USA Inc. v. Real Hearing, LLC, et al.*, Case No. 1:26-cv-07517 (N.D. Ill.).

and others from acting for the Real Hearing Entities without the receiver's authority.[4]

The Real Hearing Entities and the Debtors argue that Sonova is a competitor and that its actual objective is to shut down the Real Hearing business platform. Sonova responds with communications that it says show that the Debtors and the Real Hearing Entities previously requested or consented to a receivership. The parties dispute the meaning, completeness, privilege, and legal effect of those communications. The Court does not decide those disputes and does not rely on the challenged communications.

A separate action, *Real Hearing, LLC, et al. v. Sonova USA Inc.*,[5] is pending in the United States District Court for the Southern District of Florida (the "Florida Action"). Gail Azodo and the Real Hearing Entities filed that action as plaintiffs after the Petition Date. It was administratively closed after a suggestion of bankruptcy was filed.

The Real Hearing Entities filed an *Emergency Motion to Enforce the Automatic Stay and for Sanctions Against Sonova USA Inc. and Related Relief* (the "Stay Enforcement Motion").[6] The Debtors joined that motion.[7] Sonova filed its own motion asking the Court to determine that the stay does not apply to the two district court actions or, alternatively, to modify the stay (the "Stay Relief Motion").[8]

---

[4] *Proposed Receivership Order*, attached to *Stay Relief Motion* [Dkt. No. 74].

[5] *Real Hearing, LLC, et al. v. Sonova USA Inc.*, Case No. 1:26-cv-23894-KMM (S.D. Fla.).

[6] Dkt. No. 68.

[7] Dkt. Nos. 70, 79.

[8] Dkt. No. 74.

The Court heard both motions on August 5, 2026 at 10:30 A.M., and took them under advisement. This Order resolves both motions.

## II. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (G). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. Legal Standard

A bankruptcy petition creates an estate containing the debtor's legal and equitable interests in property.[9] The automatic stay protects the debtor from specified proceedings and protects estate property from possession or control.[10] State law ordinarily determines the nature and extent of the debtor's property rights.[11]

A debtor's ownership interest in a separate legal entity is distinct from the property owned by that entity. For example, Delaware law makes a member's interest in a limited liability company personal property but gives a member no interest in specific company property.[12] Consistent with that rule, the Eleventh Circuit distinguishes property owned by a separate entity from the debtor's ownership interest in that entity.[13]

---

[9] 11 U.S.C. § 541(a)(1).

[10] 11 U.S.C. §§ 362(a)(1), (a)(3).

[11] *Butner v. United States*, 440 U.S. 48, 54 (1979).

[12] 6 Del. C. § 18-701.

[13] *Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1348 (11th Cir. 1999).

The Court may terminate, annul, modify, or condition the stay for cause.[14] Cause is not confined to a fixed list; it depends on the circumstances, including the burdens imposed on the parties, the effect on the bankruptcy case, and the interests protected by the Bankruptcy Code.[15]

## IV. Analysis

The motions present several related but distinct questions: who may invoke the Debtors' stay, what property the stay protects, and whether either the Illinois Action or Florida Action would affect the Debtors or property of this estate. The Court begins with the threshold question of standing.

### A. Standing and the Debtors' Joinder

The Real Hearing Entities filed the Stay Enforcement Motion in their own names. They are not debtors. They have not filed claims in this case, and the present record does not establish an independent right for them to invoke the Debtors' stay to obtain protection for themselves or damages belonging to the Debtors. The Court therefore has substantial doubt about their standing to seek that relief.

However, the Court need not decide that question here. The Debtors joined the motion and requested the statutory damages remedy available to an individual injured by a willful stay violation. The Court will decide the stay issues as requests made by the Debtors to protect alleged estate property.

[14] 11 U.S.C. § 362(d)(1).

[15] *Disciplinary Bd. of the Sup. Ct. of Pa. v. Feingold*, 730 F.3d 1268, 1276–77 (11th Cir. 2013).

B. The Real Hearing Entities and Their Property

The Debtors' membership interests in the Real Hearing Entities became property of this bankruptcy estate; the property owned by the Real Hearing Entities did not. The same is true one level down: the Real Hearing Entities' interests in the Practice Entities belong to the Real Hearing Entities, and the assets of the Practice Entities belong to those entities.

The automatic stay therefore does not prevent Sonova from suing the Real Hearing Entities, liquidating claims against them, determining its asserted interests in their property, or enforcing against property they own. Nor does the stay protect the Practice Entities or their property merely because enforcement may affect the Real Hearing Entities and, in turn, the value of the Debtors' membership interests.

That last point is of natural concern to any bankruptcy estate. Almost any collection against a company can reduce the value of its owners' equity. If that economic consequence were enough to trigger the owners' bankruptcy stay, an individual bankruptcy would automatically shield every entity the debtor owned. The automatic stay is not so expansive. A reduction—even a complete loss—in the value of the Debtors' membership interests caused by lawful enforcement against nonestate property is not, without more, an act against estate property.

C. The Illinois Action

That said, the proposed receivership in the Illinois Action would do more than take possession of the Real Hearing Entities' assets. It would vest a receiver with powers otherwise exercised by officers, managers, and members, replace

existing management, and restrain the Debtors from acting for the Real Hearing Entities. Voting and governance rights attached to an estate-owned interest may themselves be estate property, and affirmative action that displaces those rights may implicate the stay.[16]

The precise division between the Debtors' rights as members and any authority they hold in separate offices as managers or officers depends on Delaware law and the governing agreements. The Court need not decide every aspect of that division. That is because, even assuming the proposed receivership would exercise control over estate owned governance rights, cause exists to modify the stay.

The businesses are not operating, value is deteriorating, and the Debtors have not presented a concrete transaction or operating proposal that would preserve their membership interests. Their plan does not separately value or provide specific treatment for those interests.[17] Keeping the stay in place would not protect an identified reorganization opportunity. It would leave deteriorating nondebtor businesses under existing control while preventing the Illinois District Court from deciding whether an independent receiver could preserve more value.

The allegation that Sonova is pursuing a receivership for an improper competitive purpose does not change that conclusion. If Sonova is using equitable process to eliminate a competitor rather than protect a legitimate claim or collateral interest, that is a serious objection to the requested receivership. But it is an objection to the merits and scope of the relief sought in Illinois—not a reason to

[16] *See Walro v. Lee Grp. Holding Co. (In re Lee)*, 524 B.R. 798, 803–04 (Bankr. S.D. Ind. 2014); *In re Bello*, 612 B.R. 389, 394–95 (Bankr. E.D. Mich. 2020).

[17] *See* Dkt. No. 50.

enlarge the bankruptcy estate. The Illinois District Court can test Sonova's claims and liens, evaluate its purpose, consider the likely effect on the businesses, weigh less drastic alternatives, and impose whatever safeguards it considers necessary.

Nor would appointment of a receiver simply hand the Real Hearing Entities to Sonova. A federal receiver is an officer of the appointing court, not the agent of the party who requested the appointment. The receiver acts under that court's direction and administers receivership property for the benefit of all whose rights are ultimately established, including creditors and equity holders.[18] The receiver also remains subject to the duties imposed by the appointment order and applicable law.[19] If a receiver were to sacrifice value for Sonova's competitive benefit, the Debtors and the Real Hearing Entities could seek relief from the Illinois District Court, which would supervise the receiver.

This allocation respects both courts' roles. This Court decides what the automatic stay protects. The Illinois District Court decides whether Sonova has established a default, a valid and enforceable lien, grounds for a receiver, and entitlement to any particular receiver power. Nothing in this opinion prejudges those questions.

The stay is therefore modified to the extent necessary to permit the Illinois District Court to consider and, if warranted, implement a receivership. The relief will not permit Sonova or a receiver to add the Debtors as defendants, liquidate or collect a personal claim against them, dispose of their membership interests, control claims or privileges that belong to them or this estate, or take distributions already

[18] *Atlantic Tr. Co. v. Chapman*, 208 U.S. 360, 370–71 (1908).

[19] 28 U.S.C. § 959(b)

payable directly to them. Those boundaries give the Illinois District Court room to address the nondebtor entities while preserving this Court's control over the Debtors and estate property.

D. The Florida Action

The Florida Action is different. Gail Azodo and the Real Hearing Entities brought it as plaintiffs after the bankruptcy filing. The automatic stay ordinarily does not prevent a debtor from prosecuting an action or prevent the defendant from defending against it.[20] The stay therefore does not require that action to remain closed while the plaintiffs pursue their affirmative claims and Sonova defends. It does, however, continue to prohibit Sonova from obtaining affirmative recovery against Gail Azodo or estate property without further relief from this Court.

E. Sanctions

Sanctions are not warranted on this record. As to the Real Hearing Entities, they cannot recover under § 362(k)(1), which provides a damages remedy only to an "individual" injured by a willful violation of the automatic stay.[21] The Eleventh Circuit has held that a corporation is not an "individual" for purposes of that provision.[22] And because the alleged stay violation identified here concerns interference with the Debtors' estate-owned membership and governance rights, rather than property of the Real Hearing Entities themselves, there is also a

---

[20] *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1331 n.2 (11th Cir. 2004).

[21] 11 U.S.C. § 362(k)(1).

[22] *Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1552 (11th Cir. 1996).

substantial question whether the Real Hearing Entities have standing to recover damages for such a violation in any event.

As to the Debtors, although they are persons eligible to recover under § 362(k), that provision is unavailing here because they have not proven actual damages caused by the violation. No receiver was appointed, and the Debtors have not identified any compensable loss resulting from Sonova's filing or prosecution of the receivership request. Accordingly, the record does not support an award of actual damages, costs, or attorneys' fees to the Debtors under § 362(k)(1).

Sanctions under § 105(a) are likewise unjustified. The Eleventh Circuit recognizes that a non-individual entity may seek compensatory relief for a violation of the automatic stay through the Court's civil contempt authority under § 105(a).[23] Civil contempt, however, is inappropriate where there is a "fair ground of doubt" as to whether the challenged conduct was prohibited.[24]

Even assuming the Real Hearing Entities have standing to seek compensatory contempt sanctions under § 105(a) here, that standard is not satisfied. Sonova proceeded only against nondebtor entities and their property, and the applicability of the automatic stay turned on the narrow question of whether the proposed receivership would displace particular governance rights belonging to the Debtors' estate. No receiver has been appointed; Sonova sought to hold the Illinois proceeding while the issue was presented to this Court; and Sonova sought a determination from this Court concerning the scope of the automatic stay. Under

[23] *Jove*, 92 F.3d at 1553.

[24] *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019).

those circumstances, there was at least a fair ground of doubt as to the extent to which Sonova's actions were prohibited by the automatic stay. Civil contempt sanctions under § 105(a) therefore are not warranted.

F. The Debtors' Request to Operate the Real Hearing Entities

The Debtors and the Real Hearing Entities request an order authorizing the Debtors to conduct the entities' business in the ordinary course, including exercising governance authority and making decisions concerning asset sales, investments, and distributions. The Bankruptcy Code is not the source of the Debtors' authority to operate these nondebtor entities, but neither does it eliminate whatever authority they otherwise possess. The Debtors may exercise whatever management and governance rights they hold under the applicable operating agreements and nonbankruptcy law.

Sonova's request for a receiver may affect those rights. Whether a receiver should be appointed, what authority any receiver should possess, and the extent to which a receiver may displace or limit the Debtors' management authority are questions for the Illinois District Court. This Court decides only that the Bankruptcy Code does not give the Debtors additional authority over property belonging to the Real Hearing Entities and that the automatic stay does not prevent the Illinois District Court from deciding the effect of a receivership on the Debtors' existing authority.

## V. Order

For these reasons, the Court **ORDERS**:

1. The Stay Enforcement Motion [Dkt. No. 68], as joined by the Debtors [Dkt. Nos. 70, 79], is **GRANTED IN-PART** only to the extent this Order confirms that the Debtors' membership interests in Real Hearing LLC and Real Hearing 2 LLC are property of the estate. The motion is otherwise **DENIED**.
2. All requests for sanctions, damages, contempt relief, attorneys' fees, and expenses are **DENIED**.
3. Nothing in this Order prohibits the Debtors from operating the Real Hearing Entities or exercising management or governance authority to the extent permitted by the applicable operating agreements and nonbankruptcy law. This Order grants the Debtors no additional authority under the Bankruptcy Code. Whether a receiver should be appointed and, if so, the extent to which the receiver may displace or limit that authority will be determined by the Illinois District Court in accordance with this Order.
4. Sonova's Stay Relief Motion [Dkt. No. 74] is **GRANTED IN-PART** and **DENIED IN-PART** as provided in this Order.
5. As to the Real Hearing Entities and Practice Entities, the automatic stay does not prohibit litigation to determine claims against those entities, entry of judgment against them, determination of the validity, priority, or extent of asserted liens in entity owned property, or enforcement against entity owned property.
6. With respect to the Illinois Action [*Sonova USA Inc. v. Real Hearing, LLC, et al.*, Case No. 1:26-cv-07517 (N.D. Ill.)], to the extent the automatic stay

applies, it is **MODIFIED** to permit Sonova to request, and the Illinois District Court to consider and, if warranted under applicable nonbankruptcy law, grant and implement the following relief:

a. adjudication of Sonova's claims and the Real Hearing Entities' defenses, entry of judgment against the Real Hearing Entities, and determination and enforcement of asserted liens against property of the Real Hearing Entities;

b. appointment and supervision of a receiver over the Real Hearing Entities and their property;

c. authorization for a receiver to possess, preserve, and control property of the Real Hearing Entities; control their interests in the Practice Entities; operate, finance, sell, or otherwise dispose of the assets of the Real Hearing Entities; wind down the Real Hearing Entities; and pursue, defend, settle, or release claims owned by the Real Hearing Entities;

d. authorization for a receiver to exercise powers otherwise held by the Real Hearing Entities' officers, managers, or members; displace existing management; act for the entities without the Debtors' consent; and, if the Illinois District Court determines that such authority is proper, commence a case under title 11 for either Real Hearing Entity;

e. orders requiring the Debtors, solely in their representative capacities as members, managers, officers, employees, or agents of the Real Hearing Entities, to cooperate with a receiver; surrender entity-owned

property, books, records, credentials, and information; and refrain from acting for the Real Hearing Entities except as authorized by the receiver or the Illinois District Court; and

f. such other entity-level relief as the Illinois District Court determines is authorized and appropriate under applicable law.

7. Notwithstanding paragraph 6, this Order does not authorize any person to:

a. add either Debtor as a defendant in the Illinois Action, adjudicate a prepetition claim against either Debtor, or obtain affirmative monetary or injunctive relief against either Debtor personally;

b. collect from either Debtor or obtain possession or control of property owned by either Debtor or this bankruptcy estate, except for the limited displacement and exercise of governance authority expressly permitted by paragraph 6;

c. levy upon, foreclose upon, sell, transfer, assign, cancel, extinguish, or otherwise dispose of the Debtors' membership interests in Real Hearing LLC or Real Hearing 2 LLC;

d. prosecute, settle, release, or control a claim owned personally by either Debtor or by this bankruptcy estate, including Gail Azodo's individual claims in the Florida Action;

e. waive a privilege belonging personally to either Debtor or to this bankruptcy estate; or

f. redirect or retain a distribution that has been lawfully declared and is payable directly to either Debtor because of an estate owned

membership interest. Any such distribution remains subject to the Bankruptcy Code and further orders of this Court.

8. Nothing in this Order determines that a proposed receiver may sell entity property free and clear of liens or interests, grants authority under the Bankruptcy Code for such a sale, determines the validity or priority of any asserted lien, or directs the Illinois District Court to grant any relief. The Illinois District Court retains full authority to decide the merits, whether Sonova's purpose is proper, whether a receivership is equitable, what safeguards are necessary, the receiver's duties and powers, and the procedures that apply under nonbankruptcy law.

9. With respect to the Florida Action [*Real Hearing, LLC, et al. v. Sonova USA Inc.*, Case No. 1:26-cv-23894-KMM (S.D. Fla.)], the Court clarifies:

    a. the automatic stay does not prohibit Gail Azodo and the Real Hearing Entities from prosecuting their affirmative claims or prohibit Sonova from defending against those claims, seeking dismissal, or asserting recoupment solely to reduce or defeat a recovery;

    b. the automatic stay does not prohibit Sonova from asserting affirmative claims against the Real Hearing Entities or seeking recovery from their property;

    c. the automatic stay continues to prohibit Sonova from prosecuting an affirmative claim against Gail Azodo, obtaining affirmative relief against her, or collecting from her or estate property, absent further order of this Court; and

d. the Court expresses no view on whether the Florida District Court should reopen the Florida Action or on the merits of any claim or defense.

10. Nothing in this Order adjudicates Claim No. 21-1; the pending objection to that claim, as joined by the Debtors; the Real Hearing Entities' standing to prosecute that claim objection; the enforceability of any loan, supply, amendment, forbearance, guaranty, or security agreement; the existence of a default; the perfection or priority of any asserted lien; or any dischargeability issue. Those matters are reserved.

11. Sonova must promptly file a copy of this Order in the Illinois Action. Gail Azodo and the Real Hearing Entities must promptly file a copy in the Florida Action.

12. The fourteen day stay under Federal Rule of Bankruptcy Procedure 4001(a)(4) is waived. This Order is effective immediately.

13. The Court retains jurisdiction to interpret and enforce this Order.

###

Copies To:
All Parties in Interest.